UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHARON SCHRADER,

       Plaintiff,                             Hon. Richard Alan Enslen

v.                                         Case No. 1:06-CV-761

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years of age at the time of the ALJ's decision. (Tr. 17). She successfully completed high school and worked previously as an automotive assembler. (Tr. 17, 71, 76).

Plaintiff applied for benefits on July 8, 2003, alleging that she had been disabled since January 17, 2003, due to osteoporosis. (Tr. 43-45, 70). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-42). On August 17, 2005, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 238-67). In a written decision dated November 14, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 16-25). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On January 24, 2001, Plaintiff participated in a bone densitometer examination of her hip and lumbar spine, the results of which revealed evidence of osteoporosis. (Tr. 177). Plaintiff

was instructed to consume sufficient calcium, reduce caffeine consumption, take an anti-resorptive medication (such as Fosamax), and engage in an appropriate amount of exercise. (Tr. 178).

Plaintiff suffered a work-related injury to her left shoulder on January 29, 2002. (Tr. 115, 164). Plaintiff's doctor diagnosed Plaintiff with overuse syndrome and imposed limitations on her ability to engage in reaching activities with her upper extremities. (Tr. 115, 153).

X-rays of Plaintiff's chest, taken on August 20, 2002, revealed "fractures of left third, fifth and sixth ribs." (Tr. 124).

X-rays of Plaintiff's lumbar spine, taken on December 9, 2002, were "normal." (Tr. 122). The vertebral segments were "normally aligned" and the vertebral bodies and disc heights were "within normal limits." There was no evidence of fracture, subluxation, bony destructive process, or soft tissue abnormality. *Id.*

X-rays of Plaintiff's thoracic spine, taken on January 13, 2003, revealed a "compression deformity" at T8 and a "slight compression" at L2. (Tr. 121).

X-rays of Plaintiff's lumbar spine, taken on April 4, 2003, revealed "minimal" degenerative changes at L5-S1 and "mild" sclerotic change at the inferior SI joints. (Tr. 119). There was evidence of "diffuse mineral loss throughout the lumbar spine," but no evidence of spondylolysis or spondylolisthesis. *Id.*

On August 7, 2003, Plaintiff was examined by Dr. John Flood. (Tr. 164-67). Plaintiff reported that she was laid off from work earlier that year because GM could not accommodate her then existing upper extremity restrictions. (Tr. 164-65). Plaintiff reported that she intermittently experienced a "dull, achy pain" in her left shoulder. (Tr. 165). She reported that her pain varies from "absent to severe" depending on her level of activity. Plaintiff reported that her

4

pain is relieved with rest and Tylenol. Plaintiff reported that she had never participated in physical therapy, injection therapy or manipulation. Plaintiff reported that she does not experience weakness, grinding, popping, or grating in her shoulder and that her shoulder has never locked up or dislocated.

An examination of Plaintiff's left shoulder revealed no evidence of weakness, atrophy or deformity. Impingement testing was positive. Plaintiff exhibited "full active motion" of her shoulder with no evidence of instability or sensory deficiency. *Id.* The doctor recommended that Plaintiff be treated with non-steroidal anti-inflammatory medication and physical therapy. (Tr. 166). With respect to Plaintiff's previous rib fractures, Dr. Flood concluded that "there are no symptoms whatsoever referable to those areas" and that "[n]o specific treatment is warranted." *Id.*

The doctor concluded that Plaintiff could perform work activities subject to the following limitations: (1) no lifting more than 10 pounds; (2) no work above shoulder level with the left upper extremity; (3) no repetitive pushing or pulling with the left upper extremity; and (4) no use of vibratory or power tools with the left upper extremity. (Tr. 167).

On August 20, 2003, Plaintiff participated in a consultive examination, conducted by Dr. H. D. Jones. (Tr. 136-38). Plaintiff reported that she was unable to work because of "progressive osteoporosis," for which she takes Fosamax, and "chronic cervical, thoraco and lumbar discomfort, for which she uses Tylenol." (Tr. 136-37). Plaintiff reported that she is able to shop, cook, and perform her activities of daily living. (Tr. 137). She also reported that she enjoys gardening. The results of a physical examination were unremarkable. *Id.* Plaintiff exhibited "normal range of motion of all joints including neck, back, shoulders, elbows, wrists, hands, hips, knees, ankles and feet." (Tr. 138). The results of a neurological examination were unremarkable and the doctor specifically noted that Plaintiff "does not have any pinpoint tenderness at the T8 or

L2 area today, nor does she have any residual rib pain." Plaintiff was able to get on and off the examination table and heel/toe walk without difficulty. *Id.*

On October 21, 2003, Plaintiff participated in a bone densitometer examination of her hip and lumbar spine, the results of which revealed evidence of osteoporosis. (Tr. 168-70). The doctor noted, however, that the bone density in Plaintiff's spine and hip had increased since her past bone density test. (Tr. 169). Plaintiff was instructed to consume sufficient calcium, quit smoking, reduce caffeine consumption, continue taking Fosamax, and exercise sufficiently. (Tr. 169-70).

On December 4, 2003, Plaintiff was examined by orthopedic surgeon, Dr. James Wessinger. (Tr. 153-56). Plaintiff reported that she was laid off from work earlier that year because "there was no job within her restrictions of no reaching with either upper extremity." (Tr. 153). Plaintiff reported that she experiences a "low grade ache" for which she takes only Tylenol. (Tr. 154). Plaintiff reported that she liked to play golf. *Id.*

> An examination of Plaintiff's right shoulder revealed the following:
>
> She has a slightly positive impingement sign on the right and a negatively painful arc of motion. She has excellent rotator cuff strength. There is no crepitus and no clicks or pops with range of motion. She does not guard motion.
>
> There is negative labral testing; negative cross-chest test for the AC joint; no scapular winging; smooth scapulothoracic motion and negative provocative bicipital tests. There is no shoulder girdle atrophy. There is no tenderness to palpation over the long head biceps, greater tuberosity where the rotator cuff inserts of AC joint.

(Tr. 155).

> An examination of Plaintiff's left shoulder revealed that:
>
> She easily claps both hands overhead which indicates an excellent functional range of motion. She does not guard motion, nor does she

6

> complain of discomfort. She has 180 [degrees] of flexion, 150 [degrees] of abduction, 60 [degrees] of external rotation and internal rotation to the upper lumbar spine. This motion is symmetrical bilaterally.
>
> \*   \*   \*
>
> I do not find evidence of a significant problem in this woman's left shoulder. She might possibly have had an impingement syndrome which has essentially cleared up. I would not restrict nor treat for her left shoulder.

(Tr. 155-56).

Dr. Wessinger concluded that Plaintiff experienced "significant osteoporosis with pathologic fractures of bilateral ribs." (Tr. 155). The doctor further noted that while Plaintiff "might need to be protected for her osteoporosis," her osteoporosis "is not work related" and "work would not contribute in any way to her osteoporosis." (Tr. 156).

At the administrative hearing, Plaintiff testified that she could not work because of disabling back pain. (Tr. 246). Plaintiff described her back pain as a "constant. . .burning" sensation that ranged from seven to "ten plus" (on a scale of 1-10). (Tr. 247-48, 257-58). When asked what she does to treat her pain, Plaintiff responded that she lays down occasionally and takes Advil, "maybe three or four times a week." (Tr. 248-49). Plaintiff testified that she could only walk one-half block. (Tr. 249). She did not know how long she could stand, but indicated that she could sit for 30 minutes. Plaintiff reported that she cannot lift more than five pounds. *Id.* She reported that she cannot use her left upper extremity to perform activities above shoulder level. (Tr. 255).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) osteoporosis; and (2) spontaneous rib fracture and compression fracture. (Tr. 19). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable to perform her

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform a limited range of light work activities subject to the following limitations: (1) she requires a sit/stand option; (2) she cannot lift more than 10 pounds; (3) she cannot bend more than 45 degrees; (4) she cannot perform repetitive pushing/pulling activities with her left upper extremity; and (5) she cannot use her left upper extremity to perform work with vibrating tools. (Tr. 21-22). After reviewing the relevant medical evidence, the Court

concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 38,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 260-61). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

      a.   The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff asserts that the ALJ incorrectly determined that she can perform light work. According to Plaintiff, an individual is incapable of performing light work unless they can lift 20 pounds. Because the ALJ found that she can lift no more than 10 pounds, Plaintiff claims that she is, therefore, limited to sedentary work. Plaintiff asserts that if she is limited to sedentary work she must be found disabled pursuant to the medical-vocational guidelines (a.k.a. "the grids").

Contrary to Plaintiff's assertion, an individual can be found capable of light work even where she cannot lift 20 pounds. As the relevant regulations provide, light work does not *require* that the individual be able to lift 20 pounds, but instead provides that light work "involves lifting *no more than* 20 pounds." 20 C.F.R. § 404.1567(b) (emphasis added). This provision further provides that even if the weight lifted on a job is "very little," the job nonetheless falls in the light category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm of leg controls." *Id.* The vocational expert testified that she understood the proper definition of light work articulated in this regulation. (Tr. 263-64).

When the ALJ questioned the vocational expert, he specifically asked her to consider "an individual who cannot lift more than 10 pounds but can do *light* work" subject to the restrictions articulated in his RFC determination. (Tr. 260-61). In response, the vocational expert testified that there existed 38,500 jobs "at the unskilled and *light* level" which an individual could perform consistent with such limitations. *Id.*

As noted above, the ALJ's RFC determination that Plaintiff is capable of performing a limited number of jobs at the light exertional level is supported by substantial evidence. The vocational expert identified a significant number of jobs at the light exertional level that an

individual could perform, subject to the limitations expressed by the ALJ's RFC determination. Thus, substantial evidence contradicts Plaintiff's contention that she is limited to the performance of sedentary work only.

b.   The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ discounted Plaintiff's subjective allegations, finding such to be "not fully credible." (Tr. 20). Plaintiff argues that the ALJ improperly discounted her subjective allegations. Specifically, Plaintiff alleges that the ALJ's credibility determination is not "well grounded in the evidence of record."

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The objective medical evidence does not support Plaintiff's subjective allegations of pain and limitation. Moreover, none of Plaintiff's care providers have imposed on her limitations which are inconsistent with the ALJ's RFC determination. Finally, Plaintiff's complaints of

13

disabling back pain, which she rated as between seven and "ten plus," is inconsistent with the fact that she has consistently received only conservative treatment. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  January 14, 2008                                  /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge